UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 17-6565 FMO (SSx)** | Date | **September 27, 2020** |
| Title | **E. Howard Musgrove v. Jackson Nurse Professionals, LLC, et al.** | | |

| | |
|---|---|
| Present: The Honorable | Fernando M. Olguin, United States District Judge |

| | | |
|---|---|---|
| Vanessa Figueroa | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorney Present for Plaintiff(s): | Attorney Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (In Chambers) Order Re: Motions for Summary Judgment**

Having reviewed all the briefing filed with respect to Plaintiff's Motion for Partial Summary Judgment as to Liability Only (Dkt. 74, "Plf. Motion"), and Defendant['s] Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment (Dkt. 75, "Def. Motion"), the court finds that oral argument is not necessary to resolve the motions, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## BACKGROUND[1]

E. Howard Musgrove ("plaintiff" or "Musgrove") filed this action, on behalf of himself and others similarly situated, against Jackson Nurse Professionals, LLC ("Jackson" or "defendant") on September 6, 2017.[2] (See Dkt. 1, Complaint). On December 11, 2017, plaintiff filed the operative First Amended Complaint (Dkt. 27, "FAC"), asserting claims for: (1) failure to pay overtime wages, Cal. Lab. Code §§ 510, 1194; (2) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (3) waiting time penalties, Cal. Lab. Code § 203; (4) violations of the Fair Labor Standards Act, ("FLSA"), 29 U.S.C. §§ 201, et seq.; and (5) civil penalties pursuant to the California Private Attorney General Act ("PAGA"), Cal. Lab. Code §§ 2698 et seq., based on Jackson's failure to include per diem payments and bonuses in the regular rate of pay when calculating overtime wages. (See Dkt. 27, FAC at ¶¶ 16-18, 33-63).

On March 25, 2019, the court certified the following Rule 23 class:

> All non-exempt hourly health care professionals employed by Jackson in

---

[1] Capitalization, quotation marks, and emphasis in record citations may be altered without notation.

[2] Plaintiff also named Jackson Healthcare Staffing, LLC as a defendant, (see Dkt. 1, Complaint at ¶ 7), but subsequently dismissed that defendant. (See Dkt. 14, Notice of Dismissal).

> California from September 6, 2013, through the date of class certification who worked pursuant to an Assignment Contract, worked overtime, and had the value of per diem benefits and/or monetary bonuses (other than a referral bonus) excluded from their regular rate for purposes of calculating overtime.

(Dkt. 57, Court's Order of March 25, 2019, at 15). The court also conditionally certified the following FLSA collective class:

> All non-exempt hourly health care professionals employed by Jackson in the United States within three years prior to the date of certification who worked pursuant to an Assignment Contract, worked in excess of 40 hours in one or more workweeks, and had the value of per diem benefits and/or monetary bonuses (other than a referral bonus) excluded from their regular rate for purposes of calculating overtime.

(Id.).

Plaintiff seeks partial summary judgment as to liability with respect to each claim asserted in the FAC, (see Dkt. 74, Plf. Motion at 1-2), while defendant seeks partial summary judgment as to each claim based on the per-diem payments. (See Dkt. 75, Def. Motion at 1-3); (Id. at 1. n. 1) ("The per diems-related claims are the subject of this Motion.").

## STATEMENT OF FACTS[3]

Jackson is a Florida-based health care staffing company that places nurses and other medical staff ("traveler" or "employee") on temporary short-term assignments at hospitals and other healthcare facilities across the country. (See Dkt. 76-1, Joint Statement of Uncontroverted & Controverted Facts ("SUF") at D1). When a person begins employment with Jackson, he or she signs a Consultant Employment Agreement, which sets forth the general terms and conditions of the individual's employment. (See id. at D2-D3).

Before the employee begins a specific travel assignment, he or she signs an Assignment Contract or Assignment Agreement ("Assignment Agreement"). (See Dkt. 76-1, SUF at D4). The Assignment Agreement sets forth the terms and conditions of the traveler's temporary assignment, including its location, length, start and end dates, minimum required shifts per week, minimum required hours per shift, and hourly rate. (See id. at D5); (Dkt. 76-2, Joint Evidentiary Appendix re Cross-Motions for Summary Judgment ("Joint App'x"), Def. Exh. 2, Deposition of Barbara Henson ("Henson Depo") at 275). The Assignment Agreement also includes the amount of the housing allowance and meals and incidental expenses (collectively, "per diem") that will be paid

[3] Unless otherwise indicated, the following facts are undisputed or contain disputes that are not material.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 17-6565 FMO (SSx)** | Date | **September 27, 2020** |
|---|---|---|---|
| Title | **E. Howard Musgrove v. Jackson Nurse Professionals, LLC, et al.** | | |

by Jackson.[4] (Dkt. 76-1, SUF at D5, D20).

Jackson provides the per diem payment to all employees who are given an assignment that requires them to work away from their homes.[5] (See Dkt. 76-1, SUF at D16-D17). Travel assignments are typically 13 weeks long, and most travelers are required to work three 12-hour shifts a week. (See id. at D8-D9). Employees incur meal, incidentals, and lodging expenses while working away from home at their assignment location. (See id. at D13). Jackson does not restrict how employees may spend the per diem payment, (see id. at P7), and employees are not required to verify any expenses to receive their per diem payment. (See id. at P25).

Each Assignment Agreement specifies a minimum number of "required" weekly hours. (See Dkt. 76-1, SUF at P9). The typical minimum number of required hours is 36 hours per week. (See id. at P10). To receive the full weekly per diem amount, an employee must work the minimum required weekly hours. (See id. at P11, D31-32). If an employee fails to work the required minimum weekly hours, then the per diem payment is reduced. (See Dkt. 76-1, SUF at P13, D32). The full weekly per diem payment consists of seven days worth of lodging, meal and incidental expenses. (See id. at P12).

From September 2013, until early 2016, if employees fell short of their weekly "required" hours, Jackson "pro-rated" their per diem payments "proportionally according to the hours worked in said week and/or" assessed a "missed hour deduction" charge-back against their pay to offset the per diem payment for each hour they fell short. (See Dkt. 76-1, SUF at P14); (see Dkt. 76-2, Joint App'x, Henson Depo Exh. 5 ("Assignment Agreement 1") at 94) ("On each assignment, employees are required to work 36 hours per week to qualify for 100% of travel stipends and/or housing and rental car costs. [¶] If employee works less than guaranteed hours per work week, Stipends will be pro-rated proportionally according to hours worked in said week and/or $15 missed hour deduction will be applied to employee's weekly paycheck."); (Dkt. 76-2, Joint App'x, Henson Depo Exh. 6 ("Assignment Agreement 2") at 97) ("On each assignment, employees are required to work 36 hours per week. [¶] In the event employee works less than the required hours, employee agrees to a payroll adjustment of $28.50 per hour short of the required hours to

[4] Jackson uses the localized per diem rates set by the General Services Administration ("GSA") and Internal Revenue Service ("IRS") to determine the amount of the travelers' per diems reflected in the Assignment Agreement. (See Dkt. 76-1, SUF at D22). Jackson's per diem allowance amounts never exceed the applicable Continental United States ("CONUS") rate for any assignment location. (See id. at D23, D28). Travelers do not receive additional per diem payments for working more hours or shifts than the minimum amount set out in their contracts. (See id. at D24-D25, D29). The per diem payments are provided on a tax-free basis. (See id. at D30).

[5] An employee who receives a lodging per diem may either elect to live in company-arranged housing or receive a lodging per diem allowance. (See Dkt. 76-1, SUF at D26).

offset expenses."). Since early 2016, Jackson has grouped the minimum "required" weekly hours into four-hour increments and, for each four hours an employee falls short of the weekly hours requirement, Jackson deducts four hours of housing and meals-and-incidental expenses from the per diem payment.[6] (See Dkt. 76-1, SUF at P15); (Dkt. 76-2, Joint App'x, Henson Depo Exh. 7 ("Assignment Agreement 3")[7] at 100) ("On each assignment, employees are expected to work a minimum of 36 hours per week. [¶] For every half a day (4 hrs) not worked in a work week we will deduct half a day of housing, and meals, and incidental per diems."); (Dkt. 76-2, Joint App'x, Plf. Exh. 3, Henson Depo at 73) (testifying that under Assignment Agreement 3, "[f]or every four hours not worked, [Jackson] deduct[s] four hours of housing and meals-and-incidentals per diems"). Prior to 2016, Jackson assessed an hourly charge-back to offset the housing payment for each hour its employees fell short of "required" hours. (See Dkt. 76-1, SUF at P18).

The per diem payments are provided to employees on a weekly basis. (See Dkt. 76-1, SUF at D18). The hourly wages and per diem payments are included as separate items (e.g., "Housing Allow" and "M&I Allowance") in the weekly paycheck under the heading "Earnings." (See id. at P5-P6, D19); (Dkt. 76-2, Joint App'x, Plf. Exh. 5, Wage Statement); (id., Def. Exh. 4, Declaration of Barbara Henson in Support of Defendant's Motion for Partial Summary Judgment ("Hensen Decl.") at Exh. 3, Wage Statement).

In connection with its recruitment of potential employees, Jackson uses an internal "FAQ" training document that refers to a "blended hourly rate" consisting of the "[t]axable hourly rates" and the "non taxed benefits such as stipends[.]" (Dkt. 76-1, SUF at P19); (Dkt. 76-2, Joint App'x, Plf. Exh. 3, Henson Depo at 51, 52-53); (id., Henson Depo Exh. 4, Jackson "FAQ" Internal Training Document at 92) ("What are your hourly rates? Taxable hourly tarts [sic] at $20/hr and with added non taxed benefits such as stipends a blended hourly rate would be closer to $30-$55/hour."). According to Barbara Henson ("Henson"), the Senior Vice President of Jackson, (Dkt. 76-2, Joint App'x, Def. Exh. 4, Henson Decl. at ¶ 1), the FAQ provides recruiters with a "way to speak to [the] nurses . . . kind of in their lingo[,]" and "break[s] down the provided housing and meals-and-incidentals reimbursement to an hourly number and then adding it to their hourly wage number[.]" (Dkt. 76-2, Joint App'x, Plf. Exh. 3, Henson Depo at 52-53). The "blended hourly rate," as used in the FAQ, is the combination of the hourly taxable rate plus the hourly amount of the per diem payment. (See id. at 53). When presenting a pay package to a nurse, Jackson includes the per

---

[6] Since 2016, Jackson has not assessed a charge-back to cover the value of housing when an employee elects to take company-provided housing as opposed to a housing per diem. (See id. at P17).

[7] Assignment Agreement 1 was in force between 2013 and the beginning of 2015, (see Dkt. 76-2, Joint App'x, Plf. Exh. 3, Henson Depo at 58-59), and Assignment Agreement 2, which replaced Assignment Agreement 1, was in place between 2015 and the first quarter of 2016. (See id. at 64-66). Assignment Agreement 3 replaced Assignment Agreement 2, and is currently the one used by Jackson. (See id. at 70-71).

diem payments because "many of [Jackson's] nurses don't separate the two" and often ask "What is our take-home?" or "What is our pay package?" (Dkt. 76-1, SUF at P20); (see also Dkt. 76-2, Joint App'x, Plf. Exh. 3, Henson Depo at 26-27).

The average hourly rate paid to the certified California class for travel assignments in California is approximately $20 per hour. (See Dkt. 76-1, SUF at P21). The average pay rate for nurses in California is $51 per hour. (See id. at P22). The average weekly per diem paid to the certified California class for travel assignments in California is approximately $1,037.47. (Id. at P23). When the average weekly per diem payment is divided by the typical "required hours" of 36 per week, it results in an hourly rate of approximately $29 per hour.[8] (See id. at P24).

Jackson expects that employees will remain away from their home for the entire duration of their assignment. (Dkt. 76-1, SUF at P27). Jackson concedes that employees will incur meal, incidental, and lodging expenses while on assignment regardless of the number of hours worked in a particular week. (See id. at P28). Jackson does not include the value of the per diem payment in the "regular rate" when calculating overtime pay. (See id. at P33).

Jackson occasionally agrees to pay employees one or more monetary bonuses for working, including sign-on, completion, extension, and other bonuses. (See Dkt. 76-1, SUF at P34). The amount of and conditions for earning such bonuses are agreed to at the outset of the assignment. (See id. at P35). Jackson also excludes the monetary bonuses from the regular rate when calculating overtime. (See id. at P37).

## LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id.

The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the moving party fails to carry its initial burden of

[8] According to plaintiff, when the hourly per diem rate is combined with the base hourly wage, it results in an average rate of approximately $49 per hour, which plaintiff characterizes as "suspiciously close to the prevailing pay of rate of approximately $51 per hour for California nurses." (Dkt. 76, Joint Brief Re: Cross Motions for Summary Judgment or Partial Summary Judgment ("Joint Br.") at 9).

production, "the nonmoving party has no obligation to produce anything." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000).

If the moving party has sustained its burden, the burden then shifts to the nonmovant to identify specific facts, drawn from materials in the file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested. See Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Anderson, 477 U.S. at 256, 106 S.Ct. at 2514 (A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial.").[9] A factual dispute is material only if it affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth. SEC v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982). Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552; see Anderson, 477 U.S. at 252, 106 S.Ct. at 2512 (parties bear the same substantive burden of proof as would apply at a trial on the merits).

In determining whether a triable issue of material fact exists, the evidence must be considered in the light most favorable to the nonmoving party. See Barlow v. Ground, 943 F.2d 1132, 1134 (9th Cir. 1991). However, summary judgment cannot be avoided by relying solely on "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986) (more than a "metaphysical doubt" is required to establish a genuine issue of material fact). "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to survive summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512.

## DISCUSSION

I. WHETHER PER DIEM PAYMENTS MAY BE EXCLUDED FROM THE REGULAR RATE.

The FLSA and California law require that overtime be paid at one and one-half times the "regular rate." 29 U.S.C. § 207(a)(1) ("[N]o employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.); Cal. Lab. Code § 510(a) ("Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight

[9] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." Local Rule 56-3.

hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee."). "The 'regular rate' is defined as 'all remuneration for employment paid to, or on behalf of, the employee,' subject to a number of exclusions set forth in the Act."[10] Flores v. City of San Gabriel, 824 F.3d 890, 895 (9th Cir. 2016) (quoting 29 U.S.C. § 207(e)).

Exemptions are to be given a "fair" interpretation, rather than a narrow one, Encino Motorcars, LLC v. Navarro, 138 S.Ct. 1134, 1142 (2018), and an "employer bears the burden of establishing that it qualifies for an exemption[.]" Flores, 824 F.3d at 897. The exemption at issue here excludes from the regular rate of pay

> payments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment[.]

29 U.S.C. § 207(e)(2).

Jackson contends that § 207(e)(2) of the FLSA permits exclusion of the per diem payments from the regular rate. (See Dkt. 76, Joint Brief at 26-40). According to Jackson, the per diem payments may be excluded "because they are reasonable approximations of living expenses while away from home incurred by an employee in furtherance of [Jackson's] business interests and properly reimbursed by the Company." (Id. at 27). Plaintiff contends that the per diem payments are not based on the actual or approximate amount of expenses incurred by an employee, but instead fluctuate and are contingent upon the number of hours an employee works, and must therefore be included in the regular pay. (See id. at 1, 10-16). Thus, "[t]he primary question [in this case] is whether [Jackson's] reduction of the per diem amount when an employee worked less than his contracted hours per week changed the per diem payment from one based on reimbursement of expenses to one tied to hours worked[.]" Howell, 401 F.Supp.3d at 1089 (internal quotation marks omitted).

Although the Ninth Circuit has not yet addressed whether per diem payments that vary with the number of hours worked must be included in an employee's regular rate of pay for purposes of calculating overtime, several district courts in the Ninth Circuit have confronted this question in

---

[10] Because California law does not define "regular rate," courts look to the FLSA for related state-law claims. See Howell v. Advantage RN, LLC, 401 F.Supp.3d 1078, 1088 n. 6 (S.D. Cal. 2019) ("California law does not define 'regular rate'; consequently, California courts look to the FLSA.").

a nearly identical context. See Junkersfeld v. Per Diem Staffing Systems, Inc., 2019 WL 3842067 (N.D. Cal. 2019); Howell, 401 F.Supp.3d 1078; Dittman v. Medical Solution, L.L.C., 2019 WL 4302752 (E.D. Cal. 2019); Carlino v. CHG Medical Staffing, Inc., 2020 WL 2512402 (E.D. Cal. 2020); Clarke v. AMN Services, LLC, 2018 WL 3357467 (C.D. Cal. 2018).[11] Indeed, the cases involve staffing companies[12] that place nurses in medical facilities across the nation for short term travel assignments that typically require 13-week assignments and weekly hour requirements consisting of three 12-hour shifts.[13] As in this case, the defendants provided weekly per diem payments that were adjusted if an employee did not work the required minimum hours. With the exception of Clarke, these courts concluded that the per diem payments must be included in the regular rate for purposes of calculating overtime. See, e.g., Junkerfeld, 2019 WL 3842067, at *2

---

[11] Most of Jackson's arguments were raised and rejected by these courts. (See, e.g., Dkt. 76, Joint Br. at 27) (contending that the per diems are properly excluded from the regular rate because "they are reasonable approximations of living expenses . . . incurred by an employee in furtherance of [Jackson's] business interests and properly reimbursed by the [c]ompany") (citing 29 U.S.C. § 207(e)(2)); Carlino, 2020 WL 2512402, at *4 ([Defendant] contends that it properly excludes the value of the per diems from travelers' regular rates because the per diems are 'reimbursements that reasonably approximate expenses incurred on [defendant's] behalf' and are therefore exempted under § 207(e)(2)."); (Dkt. 76, Joint Br. at 27) (stating that under Ninth Circuit authority, courts focus "'on whether a given payment is properly characterized as compensation, regardless of whether the payment is specifically tied to the hours an employee works'") (quoting Flores, 824 F.3d at 900); Carlino, 2020 WL 2512402, at *5 (noting that defendant argued that in the "Ninth Circuit the question is 'whether the payment at issue is generally understood as compensation to the employee, not whether the payment is tied to specific hours worked by the employee'") (emphasis omitted); (Dkt. 76, Joint Br. at 28) (contending that "recouping per diems when a traveler does not incur expenses on the company's behalf [because the traveler did not work the required hours] does not alter the character of the per diems into compensation" but instead "ensures that the per diems are a reasonable approximation of expenses incurred on the company's behalf") (emphasis omitted); Carlino, 2020 WL 2512402, at *7 (Defendant "argues that its practice of reducing travelers' weekly per diems based on hours worked does not transform those per diems into compensation for hours but instead 'ensures the reasonableness of [defendant's] estimated reimbursement of expenses incurred on its behalf.'"); Howell, 401 F.Supp.3d at 1090 ("Defendant claims that these adjustments to the weekly per diem allowed it to better approximate expenses that [t]ravelers incurred on its behalf."). For the reasons set forth in Carlino and Howell, the court rejects Jackson's arguments here.

[12] Indeed, these cases even involve the same counsel.

[13] The defendant and the employment arrangement are not specifically set forth in Dittman, but the question presented is identical. See 2019 WL 4302752, at *2 ("Few courts have answered the question raised here (i.e., whether travel per diems that are reduced when employees miss shifts should be included in the calculation of the regular rate)[.]").

("[R]educing the per diem and housing payments based on the number of shifts worked inextricably ties the payments to the hours worked, rending them part of the employee's regular rate.") (internal quotation marks omitted); Dittman, 2019 WL 4302752, at *2 (same); Howell, 401 F.Supp.3d at 1090 ("[T]he Court must agree with Plaintiff: that the per diem is paid weekly and adjusted based on hours or shifts worked makes the per diem function more as remuneration for hours worked than as reimbursement for expenses incurred on behalf of Defendant."); Carlino, 2020 WL 2512402, at *8 ("The court concludes that the weekly per diem that [defendant] furnishes to a traveler constitutes remuneration for hours worked and its value must therefore be included in the traveler's regular rate for the purpose of calculating her overtime pay."). For instance, in Howell, the defendant was a health care staffing company that placed nurses and other medical professionals, referred to as "Travelers," at hospitals across the country. See 401 F.Supp.3d at 1081-82. Most assignments were 13 weeks long and required employees to work three 12-hour shifts per week. See id. at 1082. The defendant provided a per diem to cover meals, incidentals, and lodging, see id., which it adjusted if the employee did not work the minimum number of hours or shifts. See id. at 1082-83. On the parties' cross-motions for summary judgment, the court held that because the "per diem [was] paid weekly and adjusted based on hours or shifts worked[,]" it "function[ed] more as remuneration for hours worked than as reimbursement for expenses incurred on behalf of Defendant." Id. at 1090.

Similarly, in Carlino, the defendant staffed nurses and technicians on short-term travel assignments across the country, typically for 13 weeks, and required the employees to work a specified number of hours each week, generally three 12-hour shifts. See 2020 WL 2512402, at *1. The defendant provided a weekly per diem, see id., but whether an employee received the full per diem payment was "conditioned on whether she ha[d] worked the contracted number of minimum required weekly hours." Id. at *2. After analyzing district court decisions within the Ninth Circuit and decisions by circuit courts outside the Ninth Circuit, including Newman v. Advanced Technology Innovation Corp., 749 F.3d 33 (1st Cir. 2014), Gagnon v. United Technisource, Inc., 607 F.3d 1036 (5th Cir. 2010), and Baouch v. Werner Enterprises, Inc., 908 F.3d 1107 (8th Cir. 2018),[14] the Carlino court concluded "that the weekly per diem that [the defendant] furnishe[d] to a traveler constitute[d] remuneration for hours worked and its value must therefore be included in the traveler's regular rate for the purposes of calculating her overtime pay." Id. at *8.

The court finds the rationale of these decisions persuasive and "joins those California district courts that have held that weekly per diem payments that are tied to the number of hours worked in a given week, as here, are part of the regular rate for the purpose of calculating overtime pay." Carlino, 2020 WL 2512402, at *6 (citing cases).[15] Jackson contends that the court

[14] Although these appellate decisions did not involve the precise issue presented in this case, they did address the use of per diems under the FLSA.

[15] Jackson argues that plaintiff did not understand the "per diems to be compensation until after he met and retained his counsel in this case." (Dkt. 76, Joint Br. at 28). However, the

should reject the above-referenced cases and instead adopt the reasoning in Clarke. (See Dkt. 76, Joint Br. at 3-5, 33-35). However, the court finds the rationale in the other cases to be more persuasive. See Carlino 2020 WL 2512402, at *7.[16] Accordingly, summary judgment is granted in plaintiff's favor on the issue of Jackson's liability as to plaintiff's first and fourth causes of action in which he alleges a failure to pay overtime by excluding the value of the per diem payments from the regular rate of pay under the California Labor Code and the FLSA, respectively. Defendant's motion for summary judgement is denied.

II. WHETHER BONUSES MAY BE EXCLUDED FROM THE REGULAR RATE.

Plaintiff seeks summary judgment as to Jackson's liability for its failure to include the value of nondiscretionary bonuses in the regular rate of pay when calculating overtime wages. (See Dkt. 74, Plf. Motion at 1); (Dkt. 76, Joint Br. at 42-43); see 29 U.S.C. § 207(e)(3) ("As used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include . . . [s]ums paid in recognition of services performed during a given period if either, (a) both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly[.]") (footnote omitted). Because Jackson does not dispute that the bonuses should have been included in the regular rate, (see, generally, Dkt. 76, Joint Br. at 43); (see also Dkt. 75, Def. Motion at 1 n. 1) (noting that plaintiff's claims rely on the failure to include the value of the bonuses in the regular rate but that "[t]he per diems-related claims are the subject of [Jackson's] Motion"), the court will grant summary judgment on the issue of Jackson's liability as to plaintiff's first and fourth causes of action in which he alleges a failure to pay overtime by excluding the value of non-discretionary

---

"'regular rate of pay cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract.'" Local 246 Utility Workers Union of America v. Southern California Edison Co., 83 F.3d 292, 297 (9th Cir. 1996) (quoting Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 464, 68 S.Ct. 1186, 1196 (1948)).

[16] Jackson contends that it is entitled to an offset for FLSA overtime overpayments pursuant to 29 U.S.C. § 207(h)(2). (See Dkt. 76, Joint Br. at 40-42); 29 U.S.C. § 207(h)(2) ("Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) shall be creditable toward overtime compensation payable pursuant to this section."). Plaintiff does not dispute that Jackson may offset extra compensation, if Jackson is able to establish – which Jackson has not yet done – that it actually paid "extra compensation" in the particular workweek for which the employee is owed additional overtime. (See Dkt. 79, Supplemental Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment (Plf. Supp. Memo") at 2-3); see Haro v. City of Los Angeles, 745 F.3d 1249, 1260 (9th Cir. 2014) ("[P]reviously-paid overtime should be offset using a week-by-week calculation.").

bonuses from the regular rate under the California Labor Code and the FLSA, respectively. See Howell, 401 F.Supp.3d at 1093.

III. FLSA STATUTE OF LIMITATIONS.

"Successful FLSA plaintiffs can recover for unlawfully withheld overtime pay for two years back from the filing date of a cause of action." Haro, 745 F.3d at 1258 (citing 29 U.S.C. § 255(a)). However, "[w]hen a violation is 'willful,' the statute of limitation extends to three years." Id. "To show willfulness, a plaintiff must demonstrate that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Id. (internal quotation marks omitted). "An employer who knows of a risk that its conduct is contrary to law, yet disregards that risk, acts willfully." Id. Indeed, "[t]he employer must take affirmative action to assure compliance[.]" Id. (internal quotation marks omitted). "The three-year statute of limitations may be applied where an employer disregarded the very possibility that it was violating the [FLSA], although [a court] will not presume that conduct was willful in the absence of evidence[.]" Flores, 824 F.3d at 906 (citation and internal quotation marks omitted).

Here, plaintiff refers to "the substantial body of case law and statutory authority" upon which it relied to establish Jackson's liability, and argues that despite Jackson's knowledge of such case law, it continued to exclude the per diem payments and bonuses from the regular rate of pay. (See Dkt. 76, Joint Br. at 45). However, plaintiff does not specifically identify such authority, and when and how Jackson was aware of it. (See, generally, id.). Accordingly, plaintiff's motion for summary judgment is denied and defendant's motion is granted to the extent it seeks to limit the FLSA statute of limitations to two years with respect to the per diem payments. See, e.g., Carlino, 2020 WL 2512402, at *9 (finding plaintiff failed to produce evidence of willfulness since she "point[ed] only to the cases that she cite[d] to in her briefs").

With respect to bonuses, defendant does not address this aspect of the FLSA claim. In any event, "it is clear under existing precedent that Defendant's failure to include non-discretionary bonuses in the regular rate was unlawful[.]" Howell, 401 F.Supp.3d at 1906; see 29 U.S.C. § 207(e)(3)(a). Accordingly, the court will grant plaintiff's motion and finds that three-year statute of limitations applies to plaintiff's FLSA claim based on the failure to include the value of nondiscretionary bonuses in the regular rate.

IV. FLSA LIQUIDATED DAMAGES.

"An employer who violates the FLSA 'shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'" Flores, 824 F.3d at 904-05 (quoting 29 U.S.C. § 216(b)). "Liquidated damages are mandatory unless the employer can overcome the difficult burden of proving both subjective good faith and objectively reasonable grounds for believing that it was not violating the FLSA." Haro, 745 F.3d at 1259 (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 17-6565 FMO (SSx)** | Date | **September 27, 2020** |
| Title | **E. Howard Musgrove v. Jackson Nurse Professionals, LLC, et al.** | | |

Here, Jackson did not address plaintiff's contention regarding liquidated damages. (See, generally, Dkt. 76, Joint Br. at 45-46). Thus, the court will grant plaintiff summary judgment on the issue of Jackson's liability for liquidated damages under the FLSA. See, e.g., GN Resound A/S v. Callpod, Inc., 2013 WL 1190651, *5 (N.D. Cal. 2013) (when plaintiff failed to oppose a motion as to a particular issue, "the Court construes as a concession that this claim element [is] not satisf[ied]"); Hall v. Mortg. Investors Grp., 2011 WL 4374995, *5 (E.D. Cal. 2011) ("Plaintiff does not oppose Defendants' arguments regarding the statute of limitations in his Opposition. Plaintiff's failure to oppose ... on this basis serves as a concession[.]"); Haro, 745 F.3d at 1259 ("Liquidated damages are mandatory unless the employer can overcome the difficult burden of proving both subjective good faith and objectively reasonable grounds for believing that it was not violating the FLSA.") (internal quotation marks omitted); Carlino, 2020 WL 2512402, at *9 ("Because CHG has proffered no evidence to establish that it had an honest intention to ascertain and follow the dictates of the FLSA, the court concludes that plaintiff is entitled to summary judgment on the issue of CHG's liability for liquidated damages as a matter of law.").

V. UCL.

The UCL prohibits "unfair competition," broadly defined as "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200; Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal.4th 163, 180 (1999). With respect to the unlawful prong, § 17200 "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000) (internal quotation marks omitted). Here, because plaintiff's claim for violation of the UCL is derivative of his unpaid overtime claims, (see Dkt. 76, Joint Br. 46-47), the court will grant summary judgment in plaintiff's favor on his UCL claim.

VI. WAITING TIME PENALTIES.

"If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201(a). "If an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a). Here, the court is not persuaded that plaintiff has established that Jackson intentionally failed or refused to perform an act which was required to be done" as it relates to the per diem payment. See Carlino, 2020 WL 2512402, at *10 (internal quotation marks omitted); 8 Cal. Code Regs. tit. 8, § 13520(a) ("A 'good faith dispute' that any wages are due occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist.").

However, defendant did not address its failure to include the value of bonuses in the regular rate with respect to waiting time penalties. (See, generally, Dkt 76, Joint Br. at 48-49); GN

Resound A/S, 2013 WL 1190651, at *5; Hall, 2011 WL 4374995, at *5. Thus, the court will deny plaintiff's motion for summary judgment as to waiting time penalties with respect to the per diem payments and grant it with respect to bonuses. The court will grant Jackson's motion for summary judgment as to this claim as it relates to the per diem payments. See, e.g., Howell, 401 F. Supp.3d at 1096 (granting summary judgment in plaintiff's favor as to her waiting time claim based on bonuses, and denying it based on per diems).

V. PAGA PENALTIES.

The PAGA "authorizes an employee to bring an action for civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees[.]" Iskanian v. CLS Transportation Los Angeles, LLC, 59 Cal.4th 348, 360 (2014). Section 558(a) of the California Labor Code provides that "[a]ny employer . . . who violates, or causes to be violated, a section of this chapter [including § 510] shall be subject to a civil penalty[.]"

Here, because Jackson violated § 510 by failing to include the value of the per diem payments and bonuses in the regular rate when calculating overtime wages, Jackson is liable for civil penalties under the PAGA.[17] See Howell, 401 F.Supp.3d at 1097 ("Because the Court concludes that there exist no genuine disputes of material fact [that] Defendant violated Section 510, . . . the Court also concludes that there exist no genuine disputes of material fact that Defendant violated Section 558. Accordingly, the Court DENIES Defendant's Motion for Summary Judgment and GRANTS Plaintiff's Motion for Summary Judgment as to her [PAGA] cause of action.").

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion for Partial Summary Judgment as to Liability Only **(Document No. 74)** is **granted in part** and **denied in part** as follows:

a. With respect to claim one for failure to pay overtime wages under the California Labor Code, plaintiff's motion is granted on the issue of liability as to defendant's failure to include the value of the per diem payments and non-discretionary bonuses in the regular rate of pay.

b. With respect to claim four for failure to pay overtime wages under the FLSA,

[17] Jackson acknowledges that the PAGA claim is derivative of the California Labor Code claims, and stands or falls with the court's determination of those underlying claims. (See Dkt. 76, Joint Br. at 50).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | **CV 17-6565 FMO (SSx)** | Date | **September 27, 2020** |
| Title | **E. Howard Musgrove v. Jackson Nurse Professionals, LLC, et al.** | | |

plaintiff's motion is granted on the issue of liability as to defendant's failure to include the value of the per diem payments and non-discretionary bonuses in the regular rate of pay;

c. The FLSA collective action is entitled to liquidated damages;

d. With respect to claim two for violation of the UCL, plaintiff's motion is granted as to liability;

e. With respect to the claim five under the PAGA, plaintiff's motion is granted as to liability; and

f. Plaintiff's motion is denied in all other respects.

2. Defendant's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment **(Document No. 75)** is **granted in part** and **denied in part** as follows:

a. Defendant's motion is granted to the extent it seeks to limit the FLSA statute of limitations to two years with respect to the per diem payments;

b. Defendant's motion is granted with respect to the per diem payments as to plaintiff's waiting time claim under the California Labor Code.

c. Defendant's motion is denied in all other respects.

3. The parties shall, no later than **October 12, 2020**, file a revised class notice that takes into account the court's rulings in this Order.

00 : 00

Initials of Preparer vdr