JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| E. HOWARD MUSGROVE, an individual on behalf of himself and others similarly situated, <br><br>    Plaintiff, <br><br>  v. <br><br>JACKSON NURSE PROFESSIONALS, LLC, et al., <br><br>    Defendants. | Case No. CV 17-6565 FMO (SSx) <br><br>**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

  Having reviewed and considered plaintiff's Motion for Final Approval of Class Action Settlement (Dkt. 102, "Motion") and Motion for Attorneys' Fees, Costs, Service Award, and Settlement Administrative Expenses (Dkt. 101, "Fees Motion"), and the oral argument presented during the final fairness hearing held on May 12, 2022, the court concludes as follows.

## BACKGROUND

  E. Howard Musgrove ("plaintiff" or "Musgrove") filed this action, on behalf of himself and others similarly situated, against Jackson Nurse Professionals, LLC ("Jackson" or "defendant") on September 6, 2017.[1]  (See Dkt. 1, Complaint).  On December 11, 2017, plaintiff filed the

---

[1] Plaintiff also named Jackson Healthcare Staffing, LLC as a defendant, (see Dkt. 1, Complaint at ¶ 7), but subsequently dismissed that defendant.  (See Dkt. 14, Notice of Dismissal).

operative First Amended Complaint (Dkt. 27, "FAC"), asserting claims for: (1) failure to pay overtime wages, Cal. Lab. Code §§ 510, 1194; (2) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (3) waiting time penalties, Cal. Lab. Code § 203; (4) violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.; and (5) civil penalties pursuant to the California Private Attorney General Act ("PAGA"), Cal. Lab. Code §§ 2698, et seq., based on Jackson's failure to include per diem payments and bonuses in the regular rate of pay when calculating overtime wages. (See Dkt. 27, FAC at ¶¶ 16-18, 33-63).

On March 25, 2019, the court certified the following class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure[2]:

> All non-exempt hourly health care professionals employed by Jackson in California from September 6, 2013, through the date of class certification who worked pursuant to an Assignment Contract, worked overtime, and had the value of per diem benefits and/or monetary bonuses (other than a referral bonus) excluded from their regular rate for purposes of calculating overtime. [("California Class")].

(Dkt. 57, Court's Order of March 25, 2019, at 15). The court also conditionally certified the following FLSA collective class:

> All non-exempt hourly health care professionals employed by Jackson in the United States within three years prior to the date of certification who worked pursuant to an Assignment Contract, worked in excess of 40 hours in one or more workweeks, and had the value of per diem benefits and/or monetary bonuses (other than a referral bonus) excluded from their regular rate for purposes of calculating overtime. [("FLSA Collective")]

(Id.).

On September 27, 2020, the court granted in part and denied in part the parties' cross-motions for summary judgment. (See Dkt. 84, Court's Order of September 27, 2020, at 13-14).

---

[2] All further "Rule" references are to the Federal Rules of Civil Procedure.

With respect to plaintiff's motion, the court granted it as to liability on the state and federal claims for failing to include the per diem payments and non-discretionary bonuses in the regular rate of pay, and also found that the FLSA Collective was entitled to liquidated damages. (Id.). As to defendant's motion, the court granted it (1) with respect to the per diem payments in connection with the waiting time claim, and (2) the FLSA statute of limitations, which the court limited to two years with respect to the per diem payments. (Id. at 14).

On October 13, 2020, the court stayed the action pending the Ninth Circuit's decision in Clarke v. AMN Services, LLC, 987 F.3d 848, 856 (9th Cir. 2021). (Dkt. 88, Court's Order of October 13, 2020). On February 8, 2021, the Ninth Circuit issued its decision in Clarke.[3] Subsequently, the parties reached a settlement which was memorialized in August 2021. (Dkt. 100, Court's Order of January 11, 2022 ("Preliminary Approval Order" or "PAO") at 3). The settlement is on behalf of the individuals who opted-into the FLSA Collective and/or did not exclude themselves from the California Class after receiving notice following the court's order certifying the California Class and FLSA Collective. (Id.); (Dkt. 57, Court's Order of March 25, 2019, at 15); (Dkt. 59, Court's Order of April 11, 2019); (Dkt. 64, Court's Order of July 16, 2019).

Pursuant to the settlement, defendant will pay a non-reversionary gross settlement amount of $1,975,000, (Dkt. 95-4, Joint Stipulation and Settlement Agreement ("Settlement Agreement") at ¶ 4), which will be used to pay class and collective action members, the class representative's service award, attorney's fees and costs, the PAGA payment to the California Labor & Workforce Development Agency ("the LWDA"), and settlement administration costs. (Id. at ¶¶ 4-5). The settlement provides for up to one-third of the gross settlement amount in attorney's fees, (id. at ¶ 5(1)); costs not to exceed $15,000, (id. at ¶ 5(2)); an incentive payment of $10,000 for Musgrove, (id. at ¶ 5(5)); and a $37,500 payment to the LWDA. (Id. at ¶ 5(4)). Also, the settlement administrator, ILYM Group, Inc. ("ILYM"), shall be paid $12,000 from the gross settlement amount. (Id. at ¶ 5(3)). With respect to the net settlement amount, 88% will be used

---

[3] On May 19, 2021, the court lifted the stay pursuant to stipulation of the parties. (See Dkt. 92, Court's Order of May 19, 2021).

3

to pay the California Class, and the remaining 12% will be used to pay the FLSA Collective. (Id. at ¶¶ 6-7). Individuals will automatically receive pro rata shares of the California Class Fund and/or FLSA Fund without having to submit claim forms. (Id.); (Dkt. 100, PAO at 3-4).

On January 11, 2022, the court granted preliminary approval of the settlement, appointed ILYM as the settlement administrator, and directed ILYM to provide notice to class members. (See Dkt. 100, PAO at 15). Thereafter, ILYM implemented the notice program approved by the court, and sent the Class Notice to 294 class members.[4] (See Dkt. 102-3, Supplemental Declaration of Madely Nava [] ("Nava Decl.") at ¶¶ 7-10); (id., Exh. B (Class Notice)); (Dkt. 100, PAO at 12-14) (approving notice program). As of April 7, 2022, ILYM had received no objections to the settlement.[5] (See id. at ¶¶ 11-12).

Plaintiff now seeks: (1) final approval of the settlement; (2) attorney's fees and costs; and (3) an incentive payment for plaintiff. (See Dkt. 102, Motion); (Dkt. 101, Fees Motion).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 23 provides that "[t]he claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Courts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (internal quotation and alteration marks omitted). A "district court has a fiduciary duty to look after the interests of . . . absent class members[,]" Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015), and must examine the settlement for "overall fairness[.]" In re Hyundai and Kia Fuel Economy Litig., 926

---

[4] The 294 individuals include 166 California Class members, and 132 FLSA collective members, with four individual who are part of both classes (Dkt. 102-3, Nava Decl. at ¶¶ 5, 7). As of April 7, 2022, 26 class notices remained undeliverable. (See id. at ¶ 10).

[5] The Class Notice did not include the option of opting out of the settlement since class members were previously provided an opportunity to do so. (Dkt. 100, PAO at 14 n. 8); see Low v. Trump University, LLC, 881 F.3d 1111, 1121 (9th Cir. 2018) (holding that "due process requires that class members be given a single opportunity to opt out of a Rule 23(b)(3) class").

F.3d 539, 569 (9th Cir. 2019) (en banc). The court may not "delete, modify or substitute certain provisions." Id. (internal quotation marks omitted). "[T]he settlement must stand or fall as a whole." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F., 688 F.2d 615, 630 (9th Cir. 1982).

Approval of a class action settlement requires the court to conduct a two-step inquiry.[6] First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Second, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). In determining whether a settlement is fair, reasonable, and adequate, the court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Id.; McKinney-Drobnis v. Oreshack, 16 F.4th 594, 607 (9th Cir. 2021) ("In 2018, Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'").

Whether the settlement agreement is negotiated prior to or after class certification, the court must apply a "higher level of scrutiny for evidence of collusion or other conflicts of interest[.]" In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011); see McKinney-

---

[6] If the class action is governed by the Class Action Fairness Act ("CAFA"), the court must also assess whether CAFA's notice requirements have been met. See 28 U.S.C. § 1715(d). Here, on September 16, 2021, CAFA notice was provided to the United States Attorney General and 30 state attorneys general of the respective states where class members reside. (See Dkt. 96, Declaration of Matthew Scholl Confirming Mailing of Class Action Fairness Act Notices at ¶ 2).

Drobnis, 16 F.4th at 608 (same); Briseno v. Henderson, 998 F.3d 1014, 1022 (9th Cir. 2021) ("Under the newly revised Rule 23(e)(2), courts should apply the Bluetooth factors even for post-class certification settlements.") (formatting omitted); id. at 1025 (holding that "courts must apply Bluetooth's heightened scrutiny to post-class certification settlements in assessing whether the division of funds between the class members and their counsel is fair and 'adequate.'") (citing Fed. R. Civ. P. 23(e)(2)(C)). Courts should look for signs of collusion, subtle or otherwise, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a 'clear sailing' arrangement[;]"[7] and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" Bluetooth, 654 F.3d at 947 (internal quotation marks and citations omitted); Campbell, 951 F.3d at 1125 (same).

## DISCUSSION

I.  FINAL APPROVAL OF CLASS SETTLEMENT.

    A.  Class Certification.

As noted above, the court previously certified a Rule 23 California Class. (See Dkt. 100, PAO at 8); (Dkt. 57, Court's Order of March 25, 2019, at 15). Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e).[8] See, e.g., Gonzalez v. BMC West, LLC, 2018 WL 6318832, *5 (C.D. Cal. 2018) ("In its Preliminary Approval Minute Order, the Court certified the Settlement Class in this matter under Rules 23(a) and 23(b)(3). Accordingly, the Court need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b).") (internal quotation marks and citation omitted).

---

[7] The Ninth Circuit defines a "clear sailing" agreement as one "providing for the payment of attorneys' fees separate and apart from class funds," Bluetooth, 654 F.3d at 947, and also as one where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." Id. at 940 n. 6; Roes, 1-2 v. SFBSC Management, LLC, 944 F.3d 1035, 1049 (9th Cir. 2019) (defining a clear sailing agreement as "an arrangement where defendant will not object to a certain fee request by class counsel") (internal quotation marks omitted).

[8] The court also certified the FLSA Collective, (see Dkt. 100, PAO at 8); (Dkt. 57, Court's Order of March 25, 2019, at 15), and sees no need to disturb that determination.

B. Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2), which require the "best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

Here, after undertaking the required examination, the court approved the form of the Class Notice and notification procedures. (See Dkt. 100, PAO at 12-14). As noted above, the notice program was implemented by ILYM. (See Dkt. 102-3, Nava Decl. at ¶¶ 7-9); (id., Exh. B (Class Notice)). Based on the record and its prior findings, the court finds that the Class Notice, (see id. at Exh. B), and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, and the class members' right to object to the proposed settlement. See Fed. R. Civ. P. 23(c)(2)(B).

C. Whether the Class Settlement Is Fair, Adequate and Reasonable.[9]

    1. **Adequate Representation and Arm's-Length Negotiations**.

Rule 23(e)(2) requires the court to consider whether "the class representatives and class counsel have adequately represented the class" and whether the settlement "was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(A)-(B); see McKinney-Drobnis, 16 F.4th at 607. The court

---

[9] Prior to the 2018 amendment to Rule 23(e), courts applied the "Churchill" factors to assess whether a class settlement was fair, adequate, and reasonable: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004); see McKinney-Drobnis, 16 F.4th at 609 (noting that prior to the 2018 amendment to Rule 23(e), the Ninth Circuit instructed courts to consider the Churchill factors). Because the Ninth Circuit has noted that "it is still appropriate for district courts to consider the[ Churchill] factors in their holistic assessment of settlement fairness[,]" McKinney-Drobnis, 16 F.4th at 609 n. 4; see also 2018 Adv. Comm. Notes to Amendments to Rule 23 ("The goal of th[e] amendment [wa]s not to displace any factor" courts considered prior to the amendment, "but rather to focus . . . on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."), the court will consider them in applying the Rule 23(e)(2) factors.

previously addressed the adequacy of counsel factor in connection with plaintiff's motion for class certification, (see Dkt. 57, Court's Order of March 25, 2019, at 11), and the arm's-length negotiations factor in connection with preliminary approval. (See Dkt. 100, PAO at 8-9). The court noted that the "parties conducted substantial formal discovery[,] which included written discovery, production of documents, [including defendant's policies] and the depositions of plaintiff and defendant." (Id. at 8) (internal quotation marks omitted). The parties also engaged in significant motion practice, including motions for class certification and summary judgment. (See 102-1, Memorandum of Points & Authorities in Support of Motion for Final Approval of Class Action Settlement ("Memo") at 3-4). The court concluded, based on the record in the case, that the "parties thoroughly investigated and considered their own and the opposing parties' positions" and "had a sound basis for measuring the terms of the settlement[.]" (Dkt. 100, PAO at 9). Based on the record before the court and the court's previous findings, the court finds these factors weigh in favor of granting final approval.

        2.    **Relief.**

In evaluating whether the relief provided to the class is adequate, the court considers: (i) "the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

As an initial matter, in granting preliminary approval, the court carefully scrutinized the settlement and determined that it was the product of arm's-length negotiations, (see Dkt. 100, PAO at 8-9), and that there was "no evidence that the settlement [was] 'the product of fraud or overreaching by, or collusion between, the negotiating parties[.]'" (Id. at 9) (quoting Rodriguez v. W. Publ'g Corp, 563 F.3d 948, 965 (9th Cir. 2009)).

After requested deductions for fees, expenses, and the service award, the settlement makes available an average payment of approximately $4,200 per individual, with the highest

payout exceeding $35,000.[10] (Dkt. 102-1, Memo at 1, 13). The court previously found that the net settlement amount was approximately 75.5% of the maximum potential recovery for the claims asserted in this action, and that it was "fair, reasonable, and adequate[.]" (See Dkt. 100, PAO at 9-10); (see also Dkt. 102-1, Memo at 13); 4 Newberg on Class Actions, § 13:51 (5th ed.) ("The primary way a court determines whether the settlement's value is sufficient is by (1) making a rough estimate of what the class would have received had it prevailed at trial (or at other endpoints) and then (2) discounting that value by the risks that the class would face in securing that outcome."). Nothing has changed since preliminary approval to undermine the court's previous findings.

        a.    *Costs, Risks, and Delay*.

In granting preliminary approval, the court found that the class recovery was adequate, "particularly when viewed in light of the litigation risks in this case" and taking into account the appellate risks and "delays associated with continued litigation[.]" (Dkt. 100, PAO at 10). The court recognized that the "risks of continued litigation [were] significant" and when "[w]eighed against those risks" and the "delays associated with continued litigation," the "benefits to the class f[e]ll within the range of reasonableness." (Id.); see Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted). The settlement provides class members immediate monetary benefits in the face of substantial delay and various defenses to plaintiff's claims. (See Dkt. 102-1, Memo at 11-13). Under the circumstances, it is significant that class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). In short, the court finds these factors support approval of the settlement.

---

[10] This includes both the California Class and the FLSA Collective. (See Dkt. 102-1, Memo at 13); (Dkt. 102-3, Nava Decl. at ¶ 10).

      b.  *Method of Distribution*.

Rule 23(e) directs the court to consider the "effectiveness of any proposed method of distributing relief to the class[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). "[T]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 Newberg on Class Actions, § 13:53 (5th ed.). Here, the settlement does not include a claims procedure. Instead, each class member will be entitled to a pro rata share of the net settlement amount without having to submit a claim form. (Dkt. 95-4, Settlement Agreement at ¶¶ 6-7); (Dkt. 100, PAO at 3-4).

      c.  *Attorney's Fees*.

Rule 23(e) requires the court to consider "the terms of any proposed award of attorney's fees, including timing of payment" in determining whether the settlement is fair, adequate and reasonable. See Fed. R. Civ. P. 23(e)(2)(C)(iii). The Ninth Circuit has interpreted this factor "as imposing an obligation on district courts to examine whether the attorneys' fees arrangement shortchanges the class." McKinney-Drobnis, 16 F.4th at 607 (internal quotation marks omitted). In doing so, the court "must balance the proposed award of attorney's fees vis-a-vis the relief provided for the class[.]" Id. (internal quotation marks omitted). The court must assess the proposed award of attorney's fees by considering the Bluetooth factors. Id. at 608 ("If we conclude that the district court did not adequately consider the Bluetooth factors, and therefore did not adequately consider signs that the parties had negotiated an unreasonable amount of attorneys' fees in assessing settlement fairness in the first instance, then we must vacate and remand the Approval Order [in addition to the attorneys' fee award], so that the court may appropriately factor this into its Rule 23(e) analysis.") (internal quotation marks omitted) (brackets in original). Here, consideration of the Bluetooth factors does not undermine the fairness of the settlement.

First, the Settlement Agreement provides for attorney's fees "not to exceed one-third (1/3)" of the gross settlement amount. (Dkt. 95-4, Settlement Agreement at ¶ 5(1)). Thus, class counsel would not be receiving a disproportionate share of the settlement. See Bluetooth, 654 F.3d at 947 (noting that a sign of collusion included "when counsel receive a disproportionate distribution of

the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded") (internal quotation marks omitted). Second, although the Settlement Agreement includes an implicit clear sailing provision,[11] (see Dkt. 95-4, Settlement Agreement at ¶ 5(1)), any fees not awarded will not revert to defendant; instead, fees will be added to the net settlement fund, from which payments to class members will be made. (See id. at ¶ 5). Thus, there is no issue as to whether the clear sailing provision undermines the settlement. See, e.g., Russell v. Kohl's Dep't Stores, Inc., 755 F.Appx. 605, 608 (9th Cir. 2018) (concluding that existence of clear sailing provision did not undermine settlement in part because class counsel's fees "would come from a common fund" and "fees not awarded to counsel . . . would not revert" to defendant).

        d.    *Additional Agreements*.

This factor considers any "agreement required to be identified under Rule 23(e)(3)[.]"[12] Fed. R. Civ. P. 23(e)(2)(C)(iv). No such agreements are at issue in this case.

        3.    **Equitable Treatment of Class Members**.[13]

Rule 23(e)(2) requires the court to consider whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "A distribution of relief that favors some class members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others, or for their own benefit." 4 Newberg on Class Actions, § 13:48 (5th ed.).

As the court previously noted, (see Dkt. 100, PAO at 10 n. 6), 88% of the net settlement amount will be used for payments to the California Class and 12% will be used for payments to the FLSA Collective. (See also Dkt. 95-4, Settlement Agreement at ¶ 6). This distribution is

---

[11] As noted earlier, one type of "clear sailing" agreement is where "the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." Bluetooth, 654 F.3d at 940 n. 6; see also Roes, 944 F.3d at 1049 (defining a clear sailing agreement as "an arrangement where defendant will not object to a certain fee request by class counsel") (internal quotation marks omitted).

[12] Rule 23(e)(3) provides that "[t]he parties seeking approval [of a settlement] must file a statement identifying any agreement made in connection with the proposal."

[13] The court will address plaintiff's request for an incentive payment below.

equitable because the potential exposure for unpaid overtime, interest, and waiting time penalties is much higher for the California Class (approximately $1,388,545.60) than for the FLSA Collective (approximately $171,834). (See Dkt. 100, PAO at 10 n. 6). This is largely due to the fact that class/collective members "regularly worked California overtime hours, but seldom worked FLSA overtime hours." (Id.). In short, this factor also weighs in favor of final approval.

### 4. The Reaction of Class Members to the Proposed Settlement.

The reaction of the class members to the proposed settlement has been very positive as there were no objections. (See Dkt. 102-3, Nava Decl. at ¶¶ 11-12). The positive reaction of the class supports approval of the settlement. See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval where only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when there were only 56 opt-outs out of the 2,385 class members and there were no objections).

In short, the court finds that the settlement is fair, reasonable, and adequate, and not the product of collusion.

## II. ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS.

### A. Attorney's Fees.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."[14] Fed. R. Civ. P. 23(h). Attorney's fees in class actions are determined "using either the lodestar

---

[14] Although the operative complaint asserts both state law claims and a FLSA claim, the court will exercise its discretion and apply federal law to the award of attorney's fees. See, e.g., Hoffman v. Constr. Prot. Servs., Inc., 2006 WL 6105638, *3 (C.D. Cal. 2006) ("Where the Complaint invokes both state and federal law, the method of calculating attorney's fees rests in the Court's discretion."). In any event, the court notes that the outcome would be the same under California law.

method or the percentage-of-recovery method." In re Hyundai, 926 F.3d at 570. The court's discretion in choosing between these two methods "must be exercised so as to achieve a reasonable result." Bluetooth, 654 F.3d at 942; see id. (In class actions where a "settlement produces a common fund . . . courts have discretion to employ either the lodestar method or the percentage-of-recovery method."); In re Hyundai, 926 F.3d at 570. The lodestar method is typically utilized when the relief obtained is "not easily monetized," such as when injunctive relief is part of the settlement. See Bluetooth, 654 F.3d at 941. The percentage-of-recovery method is typically used when a common fund is created. See id. at 942.

Under the lodestar method, the court multiplies the number of reasonable hours expended by a reasonable hourly rate. See In re Hyundai, 926 F.3d at 570. Once the lodestar has been calculated, the court may "adjust the resulting figure upward or downward to account for various factors, including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment[.]" Id. (internal citation omitted). However, "adjustments [to the lodestar calculation] are the exception rather than the rule." Fischel v. Equitable Life Assurance Society of U.S., 307 F.3d 997, 1007 (9th Cir. 2002) (internal quotation marks omitted); Johnson v. MGM Holdings, Inc., 794 F.Appx. 584, 586 (9th Cir. 2019) (same).

Under the "percentage-of-the-fund" or "percentage-of-recovery" method, the "court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee, using 25% as a benchmark." In re Hyundai, 926 F.3d at 570 (internal quotation marks omitted). The 25% benchmark "can be adjusted upward or downward, depending on the circumstances." Id.; Bluetooth, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990) ("The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors."). In determining whether to depart from the 25% benchmark, courts consider "all of the

circumstances of the case[,]" including: (1) the results achieved for the class; (2) the risk of litigation; (3) the skill required and quality of the work; (4) the contingent nature of the fee; and (5) awards made in similar cases. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); Viceral v. Mistras Grp., Inc., 2017 WL 661352, *3 (N.D. Cal. 2017) (utilizing similar factors); In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 955 (9th Cir. 2015) (explaining that "there are no doubt many factors that a court could apply in assessing an attorneys' fees award" and that "Vizcaino does not purport to establish an exhaustive list").

The percentage of fund method is the most appropriate in this action, as it is the most likely to achieve a reasonable result. See Bluetooth, 654 F.3d at 942 ("Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result."). Under the circumstances of this case, the court is persuaded that a departure from the 25% benchmark is warranted. The settlement makes available to the class and collective "more than 75% of the maximum projected unpaid overtime, interest, liquidated damages, and penalties that could be recovered through trial[,]" (Dkt. 101-1, Memorandum of Points & Authorities in Support of Motion for Attorneys' Fees, Costs, Service Award, and Settlement Administration Expenses ("Fees Memo") at 5), and results in an average payment of approximately $4,200 per individual, with the highest individual payment exceeding $35,000. (Id. at 1, 5); (Dkt. 102-3, Nava Decl. at ¶ 10). The settlement amount is on the higher end for wage and hour class action settlements over which this court has presided. Additionally, plaintiff's counsel pursued a novel theory – that, under California law, weekly per diem payments tied to hours worked must be included in the "regular rate" used to calculate overtime pay. (See Dkt. 101-1, Fees Memo at 5); (Dkt. 1, Complaint at ¶¶ 13-18). Finally, counsel has litigated this case since 2017, on a contingency basis. (See Dkt. 101-1, Fees Memo at 6). In short, the court finds that an award of one-third of the settlement fund is reasonable.[15]

---

[15] A lodestar cross-check further supports the fee award. Considering plaintiff's counsel's lodestar of $603,835, (Dkt. 101-1, Fees Memo at 10), this amount would result in a multiplier of less than 1.1.

B.    Costs.

Class counsel seek $5,424.37 in costs. (See Dkt. 101-1, Fees Memo at 11). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards a total of $5,424.37 in costs.

C.    Class Representative Service Award.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003); see Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *31 (N.D. Cal. 2011) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards.").

In its order granting preliminary approval of the settlement, the court undertook an examination of the fairness and adequacy of the service award at issue, applying the careful scrutiny required in this Circuit. (See Dkt. 100, PAO at 12); see also Radcliffe v. Experian Info. Sols. Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court determined that a service award of $7,500 was appropriate. (See Dkt. 100, PAO at 12). The court therefore concludes that the requested service payment of $10,000 is excessive, and instead awards an incentive payment of $7,500.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiff's Motion for Final Approval of Class Action Settlement **(Document No. 102)** is **granted** as set forth herein.

2. Plaintiff's Motion for Attorneys' Fees, Costs, Service Award, and Settlement Administrative Expenses **(Document No. 101)** is **granted** as set forth herein.

3. The court hereby grants final approval of the parties' Joint Stipulation and Settlement Agreement ("Settlement Agreement") (Document No. 95-4). The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to

perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

4. The form, manner, and content of the Class Notice meet the requirements of Federal Rule of Civil Procedure 23(c)(2).

5. Plaintiff E. Howard Musgrove shall be paid a service payment of $7,500.00 in accordance with the terms of the Settlement Agreement and this Order.

6. Class counsel shall be paid $658,333.33 in attorney's fees, and $5,424.37 in costs in accordance with the terms of the Settlement Agreement and this Order.

7. The Claims Administrator, ILYM, shall be paid for its fees and expenses in accordance with the terms of the Settlement Agreement.

8. The LWDA shall be paid $37,500.00 pursuant to the Settlement Agreement.

9. All class members who did not validly and timely request exclusion have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

10. Except as to any class members who have validly and timely requested exclusion, this action is dismissed with prejudice, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

11. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

12. Judgment shall be entered accordingly.

Dated this 24th day of June, 2022.

/s/
Fernando M. Olguin
United States District Judge